UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 21-cr-180 (JRT)

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                              **THE GOVERNMENT'S
SENTENCING POSITION**

ARKADY PAVLOVICH PICHURIN,

        Defendant.

## <u>INTRODUCTION</u>

The United States of America, by and through its attorneys, Charles J. Kovats, Jr., Acting United States Attorney for the District of Minnesota, and Alexander D. Chiquoine, Assistant United States Attorney, hereby submits its sentencing position. The Defendant was convicted of one count of production of child pornography. The Government respectfully requests that the Court impose a sentence of 318 months' (26.5 years) imprisonment, followed by a lifetime of supervised release.

## I.   BACKGROUND

### A.   The Defendant's History and Characteristics

The defendant is Arkady Pavlovich Pichurin, who is presently 27 years old. His life has been a blend of privilege and adversity. (*See* PSR ¶¶ 44–50 [Dkt. 21]). He was born in Russia but moved to the United States (California) when he was approximately one year old. (*Id.* at ¶¶ 44, 46). Pichurin's father is a pediatric doctor while his mother is a medical researcher. (*Id.* at ¶ 44). Both parents were active in raising Pichurin and his siblings, and he describes an economically privileged

childhood. (*Id.* at ¶ 46). However, Pichurin reports that his father physically abused him and his mother on multiple occasions.[1] (*Id.*). Pichurin also "suspects" that he was sexually molested when he was young, although he has no memory of this abuse and does not know who abused him. (*Id.*).

Pichurin struggled in school as a child. (*Id.* at ¶ 56). He spent many years on special plans designed to address his behavior and emotional health. (*Id.*). Notably, Pichurin had extensive disciplinary issues involving poor attendance, vulgarity, name-calling, and most troubling, sexual harassment. (*Id.*). The sexual harassment incident involved Pichurin grabbing and twisting the breasts of a female student while making offensive comments.[2] (*Id.*).

After he graduated from high school, Pichurin and his family moved to Rochester, Minnesota. (*Id.* at ¶ 57). Pichurin became a naturalized United States citizen in 2012 or 2013. (*Id.*). Following high school, Pichurin's academic performance improved. He earned an Associate of Science degree in computer science and later a Bachelor of Science degree in accounting. (*Id.*). Pichurin has held sporadic employment in a variety of fields ranging from electrical and welding work to financial analysis. (*Id.* at ¶¶ 60–66).

Pichurin has no physical ailments. (*Id.* at ¶ 51). He reports no significant issues with substance abuse, although he acknowledges that his father previously

---

[1] Pichurin's father apparently denies this abuse and reports that Pichurin did not experience any trauma or neglect growing up. (PSR ¶ 50).

[2] Pichurin acknowledges this sexual harassment allegation, but denies any sexual harassment occurred. (PSR ¶ 56).

2

expressed concern about his use of alcohol and/or marijuana, after which Pichurin reduced his substance use. (*Id.* at ¶¶ 54–55).

Prior to his state arrest on the instant charges, Pichurin apparently had not sought or received any mental health treatment. (*Id.* at ¶¶ 52–53). Approximately three months after his initial arrest and on his own accord (*i.e.,* not court ordered and prior to receiving a federal target letter), Pichurin submitted to a psychosexual evaluation, which diagnosed him with pedophilic disorder and major depressive disorder. (*Id.* at ¶ 52). In June 2021, and again on his own accord, Pichurin began a sex offender treatment program. (*Id.*). He has continued in that treatment, attending monthly individual and group counseling sessions in addition to receiving psychiatric care. (*Id.* at ¶¶ 52–53).

## B.      The Defendant's Criminal History

Pichurin has no criminal history. (PSR ¶¶ 34–38). However, he has numerous pending state charges pertaining to child pornography, all of which relate to the conduct underlying his federal conviction in this matter. (*Id.* at ¶¶ 39–43). As part of a global resolution with the United States and the State of Minnesota, in December 2021, Pichurin pleaded guilty to ten state counts charging possession of child pornography. (*See id.* at ¶ 39; Plea ¶¶ 1, 2(i) [Dkt. 6]).

## C.      The Instant Offense

### 1. The Defendant's online viewing and collecting of child pornography.

Since at least 2013, when he was 19 years old, Pichurin has viewed and collected images of child pornography online. (PSR ¶¶ 18, 52). When law

enforcement searched electronic devices (*e.g.,* computers, cell phones, and flash drives) seized from Pichurin's apartment in January 2021, they discovered thousands of pictures and videos of child pornography. (*Id.* at ¶ 13; Plea ¶ 2(i)). These images depict the graphic sexual abuse of hundreds of children, some of whom are only infants and toddlers. (PSR ¶ 13; Plea ¶ 2(i)). Many of these images show children being vaginally, orally, and anally raped by adults. (PSR ¶ 13; Plea ¶ 2(i)). Others capture children performing sexual acts on animals, or having animals perform sexual acts on them. (Plea ¶ 2(i)).

Pichurin admits that by 2019, he was "chatting with others" online about child pornography and obtaining child pornography from websites and chatrooms dedicated to the exchange of these materials. (PSR ¶¶ 18, 52). Evidence from some of Pichurin's seized electronics show that as early as 2015, he was frequenting a website, 4chan, which was notorious as a venue for pedophiles to communicate about and exchange child pornography.

### 2. The Defendant's production of child pornography.

Pichurin's sexual exploitation of children was not confined to "passively" viewing and collecting child pornography—he also produced it. Beginning in 2020, Pichurin sought out minors online for the purpose of using them to produce child pornography. (PSR ¶ 18; Plea ¶¶ 2(b), (g)–(h)). Some of his victims, like Minor A, were only eight years old. (PSR ¶¶ 9, 10; Plea ¶ 2(h)). Pichurin lied to, manipulated, and tricked these young girls for the purpose of getting them to send him sexually explicit images of themselves. (Plea ¶¶ 2(c)–(d), (g)). Pichurin's conduct was textbook

4

social engineering and grooming behavior for online child sex predators.[3]   For instance, he told Minor A that he was only a teenager (when he was in fact 26), preyed on her childish curiosity about relationships and sexuality, showered her with compliments, and sent her images of adult and child pornography, as well as obscene images of himself.  (*Id.* at ¶ 2(c)).

Pichurin's efforts to exploit these children were successful.  Based on his misrepresentations, manipulation, and incessant requests, and at his explicit direction, these minors sent Pichurin graphic images of themselves.  (PSR ¶ 9–12; Plea ¶¶ 2(d), (f), (h)).  They included images of the girls' genitals, of the minors masturbating and sexually penetrating themselves, and even a video of one performing a sex act on a dog.  (PSR ¶¶ 9–12; Plea ¶¶ 2(d), (f), (i)).  Pichurin also recorded himself watching these girls on live video streams, or viewing the explicit images they sent him, while he masturbated.  (PSR ¶ 9; Plea ¶ 2(d)).  Over approximately a year, Pichurin sexually exploited at least <u>twenty</u> minor girls, using them to produce child pornography.  (Plea ¶ 2(h)).

## II.    THE COUNT OF CONVICTION, PLEA AGREEMENT, AND PSR

In July 2021, Pichurin was served with a federal target letter.  He quickly agreed to plead to an Information charging one count of production of child pornography, doing so in September 2021.  The count of conviction carries and 15-year mandatory minimum and 30-year maximum sentence.  18 U.S.C. § 2251(e).

---

[3] *See* https://www.missingkids.org/theissues/sextortion (last visited 3/8/22).

In their Plea Agreement, the parties calculated Pichurin's Guidelines as follows: a total adjusted offense level of 42, a criminal history category of I, and a resulting range of 360 months of imprisonment (capped by the statutory maximum sentence). (Plea ¶ 7). The PSR and the parties agree on the Guidelines calculations. (PSR ¶¶ 32, 37, 71). There are no objections to the PSR.

In their Plea Agreement, the parties jointly recommend that the Court run Pichurin's federal term of imprisonment concurrent to any term of imprisonment he receives for his state child pornography convictions.[4] (Plea ¶ 7(i)(iii)). They further recommend that the Court credit the time Pichurin spent in state custody on his related state charges towards his federal sentence. (*Id.* at ¶ 7(i)(iv)). Finally, the parties agree and recommend that Pichurin's federal sentence include at least 25 years of supervised release with sex offender specific conditions, such as sex offender registration. (*Id.* at ¶ 7(i)(v)). Pichurin's offense of conviction requires at least 5 years of supervised release and allows up to lifetime supervision, with the Guidelines recommending lifetime supervision. *See* 18 U.S.C. § 3583(k); U.S.S.G. § 5D1.2.

## III.   THE GOVERNMENT'S SENTENCING RECOMMENDATION

The Government recommends that the Court sentence Pichurin to 318 months (26.5 years) of imprisonment, followed by a lifetime of supervised release. Such a sentence accounts for the considerations of 18 U.S.C. § 3553(a) without being greater than necessary to do so.

---

[4] Pichurin will be sentenced on his state convictions in April 2022.

6

## A.     Mitigating Considerations

The Government acknowledges that some of Pichurin's history and characteristics present mitigating factors. *See* 18 U.S.C. § 3553(a)(1). Assuming one credits Pichurin's account, the childhood physical abuse he and his mother suffered at the hands of his father was likely psychologically traumatic as well as physically painful. Pichurin's anti-social and problematic behavior throughout his school years were red flags, signaling that he needed additional support and help. However, there is no indication that his parents, or his schools, provided him with that assistance/treatment. Although this history does not excuse Pichurin's instant criminality—others have experienced much worse and not resorted to sexually exploiting children—it does counsel some leniency in his sentence.

A sex offender proactively and voluntarily seeking treatment—as Pichurin has—is rare. Pichurin's initiative and perseverance related to treatment support a lesser sentence because they portend that he will present less danger to society. *See* 18 U.S.C. § 3553(a)(2)(C). Assuming Pichurin continues sex offender and mental health treatment while incarcerated[5] and on supervised release, there is reason to believe he can control and overcome his professed sexual interest in children. *See* Przybylski, Roger, *The Effectiveness of Treatment for Adult Sex Offenders*, Sex

---

[5] The BOP offers a variety of sex offender treatment options. *See* https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp (last visited 3/8/22).

Offender Management Assessment and Planning Initiative, July 2015.[6]   A 2015 analysis of 69 studies that tracked more than 26,000 convicted sex offenders found that the recidivism rate (subsequently committing another crime of any sort) for untreated sex offenders was 32.5% as opposed to 22.4% for treated sex offenders.  *Id.* at 3.  That analysis concluded, "Although there is agreement among researchers that the knowledge base is far from complete, the evidence suggests that treatment for sex offenders—particularly  cognitive-behavioral/relapse  prevention  approaches—can produce reductions in both sexual and nonsexual recidivism."[7]  *Id.* at 4.

Finally, Pichurin's immediate and total acceptance of responsibility warrants a reduction in his sentence.  To be clear, Pichurin has already received significant benefit for this timely acceptance.  The Government allowed him to plead to a single count of production, as opposed to multiple counts (which would not group, resulting in higher Guidelines and allowing for potentially consecutive sentences), and did not require him to plead to a coercion and enticement charge (18 U.S.C. § 2422(b)), which would allow for a life sentence.  However, the immediacy and completeness of Pichurin's acceptance are deserving of additional consideration because they speak to his character, and to prevent unwarranted sentencing discrepancies.  18 U.S.C. §§ 3553(a)(1), 3553(a)(6).

---

[6] Available here: https://smart.ojp.gov/sites/g/files/xyckuh231/files/media/document/theeffectivenessoftreatmentforadultsexualoffenders.pdf (last visited 3/3/22).

[7] However, Przybylski rightly cabined this conclusion by noting that it is difficult, if not impossible, to accurately predict how any individual offender will respond to treatment.  *Id.*

Pichurin appears to have genuine remorse for the terrible harm he inflicted on his minor victims. (PSR ¶ 18). He has, without reservation, fully admitted to all his criminal conduct, sparing his young victims the potential for further trauma in the form of a trial. (*Id.* at ¶¶ 6–14, 18; Plea ¶ 2). Pichurin responded immediately to a federal target letter and quickly agreed to plead to an Information, saving the Government the resources and time of indicting him, resources it has spent capturing and charging other sex offenders.[8] He filed no pre-trial motions and did not object to the PSR, saving further Government and judicial resources. Nonetheless, Pichurin receives the same Guidelines "credit" as a defendant who pleads only after indictment, files numerous (often frivolous) motions, launches meritless objections against the PSR, and/or equivocates about their culpability through sentencing. Pichurin's sentence should reflect his timely, unequivocal, and repentant acceptance of responsibility.

## B.  Aggravating Considerations

Few crimes are as serious as those Pichurin committed, a fact his sentence must reflect and justly punish. *See* 18 U.S.C. § 3553(a)(2)(A). And because Pichurin's federal sentence will run concurrent to his state sentence, the federal sentence should account for Pichurin's production, receipt, and possession of child pornography. *See* U.S.S.G. §§ 1B1.3(a), 5G1.3(c).

---

[8] Pichurin simultaneously agreed to resolve the state charges against him, pleading guilty to ten counts of possession of child pornography, thereby sparing his victims a state trial and saving the State of Minnesota resources and time as well.

For more than seven years, Pichurin collected graphic images of children, some of whom were only infants, being horrifically abused and exploited. Pichurin was driven by his sexual desire for children—a desire so strong that he did not stop until he was apprehended by law enforcement. He amassed thousands of images of child pornography depicting hundreds of minor victims. But Pichurin did not see these children as innocent and vulnerable individuals—he saw them, and the abuse they suffered, as means to gratify his sexual desires. When pedophiles, like Pichurin, possess and exchange child pornography, they revictimize the depicted minors. These victims carry with them the anxiety, fear, despair, and anger of knowing that the images of their abuse will likely exist forever, traded amongst those who derive pleasure from the worst moment(s) of their lives. *See The Complex Experiences of Child Pornography Survivors*, The International Journal of Child Abuse & Neglect, April 2018 at 244–45.[9] Worse still, Pichurin's conduct enhanced the "market" for child pornography, making it more likely that other offenders would produce child pornography to satisfy the demand of those like Pichurin.

But Pichurin did not simply possess child pornography—he escalated his criminality and actively exploited at least <u>twenty</u> minors in less than a year, using them to produce child pornography. In the process, Pichurin demonstrated a mastery of social engineering techniques designed to deceive, isolate, and manipulate

---

[9] Available here: http://unh.edu/ccrc/pdf/CV364%20-%20GewirtzMeydan%20et%20al%202018.pdf (last visited 3/8/22).

children.  And the child pornography he produced was deranged and degrading, evidencing his total disregard for the vulnerability and humanity of his victims.

"Child pornography production offenses cause substantial and indelible harm to victims." *Federal Sentencing of Child Pornography: Production Offenses*, United States Sentencing Commission, October 2021, at 1.[10]   But these offenses also negatively impact the victims' families and communities, as detailed in the heart-wrenching victim impact statement of Minor A's father.  To recognize the seriousness of his production offenses and justly punish him for those crimes, Pichurin must be sentenced to a considerable period of incarceration.  *See* 18 U.S.C. § 3553(a)(2)(A).

A lengthy sentence is also necessary to protect the public.  *See* 18 U.S.C. § 3553(a)(2)(C).  Pichurin's sexual exploitation of children was prolific—in a year he heartlessly used at least <u>twenty</u> minors to produce child pornography, on top of the seven years he spent collecting the same.  His production victims ranged from eight to seventeen years old, but his collection of child pornography indicates his sexual interest in children runs as young as infants and toddlers.  He showed no signs of stopping until he was apprehended by law enforcement.  Pichurin's insatiable appetite for child pornography, and his willingness to go to great lengths to fulfil his sexual desire for children, make him a danger to society.  And although treatment can reduce the risk of recidivism, a disturbingly large percentage of sex offenders,

_____

[10] Available here: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf (last visited 3/8/22).

treated and untreated, ultimately reoffend.  *See* Przybylski, *The Effectiveness of Treatment for Adult Sex Offenders*, at 4.  The only certain way to protect the public, especially children, is to incarcerate Pichurin for a considerable period.

### C.      Balancing the Competing Considerations

Sentencing Pichurin to 318 months in prison (26.5 years), followed by a lifetime of supervised release, strikes the right balance.  It is a significant sentence, one that justly punishes his serious crimes and protects the public, both while he is incarcerated and after his release.  *See* 18 U.S.C. § 3553(a)(2)(A), (C).  It requires Pichurin to engage in the prolonged sex offender and mental health treatment necessary to reduce the danger he presents to children.  *See* 18 U.S.C. § 3553(a)(2)(D).  However, this sentence—below the Guidelines' recommended 360 months—also recognizes the mitigating factors of Pichurin's efforts at reformation, as well as his immediate, unequivocal, and complete acceptance of responsibility.

The Government's recommended sentence avoids any unwarranted sentencing disparities.  *See* 18 U.S.C. § 3553(a)(6).  In 2019, the average federal sentence for defendants convicted of child pornography production offenses was 275 months (23 years).  *Federal Sentencing of Child Pornography: Production Offenses*, United States Sentencing Commission, October 2021, at 3.  Of those sentences, 57.2% represented downward variances from the Guidelines' recommended range.  *Id.*  56% of these cases involved a single victim.  *Id.* at 4.  Where defendants received a sentence of 300 months or more, there tended to be an aggravating factor, like the victimization of

infants or toddlers, physical contact with the minor(s), and/or the incapacitation of the victim. *Id.* at 7.

A sentence of 318 months' imprisonment fits precisely within these statistics, ensuring there are no unwarranted disparities. Pichurin's offenses were not "average" and therefore he should not receive a sentence of only 275 months (or less). He groomed at least <u>twenty</u> minors in just one year, using each to produce especially disturbing images of child pornography. He also possessed thousands of other images and videos of child pornography, many of which depicted the graphic sexual abuse of hundreds of children. And Pichurin's victims ranged in age from infants to teenagers. His offense conduct is thus more commensurate with those production defendants who received sentences of 300 months or more.

Furthermore, the Government's recommended sentence for Pichurin is consistent with those imposed on defendants under markedly similar circumstances across the United States. For instance, the Seventh Circuit upheld a 360-month sentence for a defendant (Reibel) convicted of two counts of production of child pornography. *See United States v. Reibel*, 688 F.3d 868 (7th Cir. 2012). Reibel molested his girlfriend's three-year-old daughter and took pictures in the process. *Id.* at 869. He cooperated throughout the investigation and pleaded guilty. *Id.* at 870. Reibel experienced a difficult childhood that included physical abuse, had no criminal history, and had been gainfully employed for years. *Id.* He had a total adjusted offense level of 42, a criminal history category of I, and a Guidelines range of 360

months, capped by the maximum statutorily allowed sentence—precisely the same as Pichurin. *Id.*

The government argued for a 35-year sentence (30 years on each count, with five years run consecutive). *Id.* Reibel argued for a sentence of 188 months, just over the mandatory minimum sentence of 180 months (15 years). *Id.* The district court sentenced Reibel to 30 years, emphasizing the seriousness of his crimes, the need to provide just punishment, and the need to protect the public. *Id.*

On appeal, Reibel argued his 30-year sentence was unreasonable because it was the statutory maximum, the same sentence that "far more reprehensible" defendants who were statistically more likely to reoffend had received. *Id.* at 871. The Seventh Circuit flatly rejected this claim. *Id.* It went on to reject all of Reibel's challenges, emphasizing that it was well within the district court's discretion to emphasize the need for just punishment and to protect society when crafting Reibel's sentence. *Id.* at 871–72.

Pichurin's case is markedly like *Reibel*. The major difference is that there is no evidence Pichurin committed a hands-on offense in addition to his production, receipt, and possession of child pornography. However, Pichurin victimized at least <u>twenty</u> minors, whereas Reibel victimized one. A sentence of 318 months, as opposed to the 360 months Reibel received, properly accounts for these differences.

## IV.   CONCLUSION

For years, Pichurin sexually exploited children online. His crimes include production, receipt, and possession of child pornography. His victims range from

14

infants to teenagers and number in the hundreds.  A lengthy sentence is necessary to justly punish Pichurin and protect the public.  However, Pichurin's unequivocal and immediate acceptance of responsibility, and his proactive efforts at reformation, warrant a downward variance from the Guidelines' proposed sentence.  The Government's recommended sentence balances these competing factors and the considerations of 18 U.S.C. § 3553(a) without being greater than necessary to do so.  The Government respectfully requests that the Court sentence Pichurin to 318 months (26.5 years) of imprisonment followed by a lifetime of supervised release.

Dated:  March 11, 2022                    Respectfully Submitted,

                                          CHARLES J. KOVATS, JR.
                                          Acting United States Attorney

                                          */s/ Alexander D. Chiquoine*

                                   BY:    ALEXANDER D. CHIQUOINE
                                          Assistant United States Attorney