UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

-------------------------------------------------------

| | |
|---|---|
| United States of America, | |
| Plaintiff, | |
| v. | **DEFENDANT'S POSITION REGARDING SENTENCING** |
| Arkady Pavlovich Pichurin, | |
| Defendant. | |

-------------------------------------------------------

The parties agree that U.S.S.G. § 2G2.1(a) applies to his conviction. The parties also agree that a mandatory minimum sentence of fifteen-years applies to this instant offense and that twenty-five years of supervised release is appropriate in this case. Additionally, the parties agree on the offense characteristic enhancements addressed in the plea agreement and the PSR. Mr. Pichurin, however, disagrees with the government regarding the relevance of those enhancements in determining an appropriate sentence for his specific behavior. Mr. Pichurin moves this Court for a variance and/or departure from the Guideline sentencing range based on his substantial rehabilitation, and the Guidelines lacking credibility in this instance.

Regardless of Mr. Pichurin's Guideline sentencing range, a prison sentence above the statutory mandatory minimum of fifteen years is more than what is necessary to accomplish the sentencing goals established in 18 U.S.C. § 3553(a). The circumstances of his offense, Mr. Pichurin's nature, history, and characteristics, and the remaining factors demonstrate that a sentence of less than 180 months of imprisonment would be sufficient, to accomplish the goals in 18 U.S.C. § 3553(a). Unfortunately, the statute prevents this Court from imposing that sentence.

1

Any period of incarceration imposed that is longer than the mandatory minimum required under the statute would be unnecessarily punitive and would conflict with the personal and societal sentencing needs for Mr. Pichurin given this offense.

**I.      Guideline Calculations.**

The parties agree that the base offense level is 32, U.S.S.G. § 2G2.1(a), and a 4-level increase applies because the offense involved a minor who had not yet reached the age of 12 years old (U.S.S.G. § 2G2.1(b)(1)(A); a 2-level increase applies because the crime involved sexual acts (U.S.S.G. § 2G2.1(b)(2)(A); a 2-level increase applies because the offense involved an interactive computer service (U.S.S.G. § 2G2.1(b)(6); a 5-level increase applies because the defendant engaged in a pattern of activity involving prohibited sexual acts (U.S.S.G. § 4B1.5(b)(1); and a 3-level reduction applies for acceptance of responsibility (U.S.S.G. § 3E1.1). This results in a total offense level of 42. With a Criminal History Category of I, Mr. Pichurin's Guidelines Sentencing range is 360 months to life imprisonment.

**II.     The Guidelines for This Offense Lack Credibility**.

> I believe that the child-pornography guidelines are deeply flawed and entitled to little weight. I agree with the criticisms of those guidelines that have been made by (among many others) the Sentencing Commission itself, the Department of Justice, and numerous federal judges. The child-pornography guidelines are not based on empirical data and national experience and, for the most part, were not promulgated by the Sentencing Commission in exercising its traditional institutional functions. The guidelines almost always recommend sentences that are far in excess of what is needed to accomplish the goals of Section 3553(a), in large part because many of the enhancements that are supposed to distinguish more serious cases from less serious cases apply in almost all cases and thus fail their purpose.

Hon. Patrick J. Schiltz, *United States v. Fortier*, 17-096 (ECF 148 at 46). As further discussed, this rationale and conclusions have been voiced in other cases in this and other districts.

The argument that the child pornography Guidelines are not based on empirical data and national experience and were not promulgated by the Sentencing Commission in exercising its traditional institutional functions has been advanced and accepted by numerous courts. There is a well-established body of judicial decisions which provide well-reasoned criticisms of those Guidelines, as provide a basis of declining to follow the Guidelines in favor of carefully analyzing the facts before the court and imposing an individualized sentence that accomplishes the relevant, statutory sentencing goals without being excessive. This tradition is particularly well established by the judges in this district.[1] In the child pornography context, the Sentencing Guidelines are widely recognized as producing recommended sentences that are grossly excessive.[2] The deficiencies in those guidelines have been extensively scrutinized, criticized, and rejected by courts throughout the country.[3] Significant departures based on this have been ordered and repeatedly affirmed.[4]

This Court has reached the same conclusion, observing:

> [T]he Court agrees with the numerous courts that have determined that the Guidelines in child pornography cases are owed less deference than Guidelines for other offenses, because the Guidelinesfor child pornography crimes are largely the product of

---

[1] *See United States v. Larson*, 19-27 PJS; United *States v. Richards*, 19-106 NEB; *United States v.Howley*, 17-241 PJS; and *United States v. Alexander*, 18-251 DWF.)

[2] *See, e.g.*, *United States v. Rouse*, 936 F.3d 849, 853 (8th Cir. 2019) (J. Beam concurring); *United States v. Helton*, 782 F.3d 148, 159 (4th Cir. 2015) (Gregory, J., concurring); *United States v. Henderson*, 649 F.3d 955, 959-63 (9th Cir. 2011); *United States v. Dorvee*, 616 F.3d 174, 184-88 (2d Cir. 2010); *United States v. Kelly,* 868 F. Supp. 2d 1202, 1206 (D.N.M. 2012).

[3] *Cf. United States v. Baird*, 580 F.Supp.2d 889, 893 (D. Neb. 2008) (Judge Bataillon noted that the child pornography guidelines were not developed under the empirical approach . . . [and] the Court affords them less deference than it would to empirically-grounded guidelines); *United States v. Hanson*, 561 F. Supp.2d 1004. 1099 (E.D. Wisc., 2008) (Judge Adelman reached a similar conclusion, pointing out the serious flaws with the child pornography guidelines and concluded that given all the flaws . . . the guidelines did not deserve deference); United *States v. Shipley*, 560 F. Supp.2d 739, 744 (S.D. Iowa, 2008) (Chief Judge Pratt rejects application of the guidelines in a trading case, likewise observing that the child pornography guidelines were not based on empirical data and stating that the court affords them less deference than it would to empirically grounded guidelines); *United States v. Ontiveras,* 2008 WL 2937539 (E.D. Wis. 2008) (Judge Griesbach reaches a similar conclusion);

[4] *See, e.g., United States v. Grober*, 624 F.3d 592, 596-98, 611 (3d Cir. 2010); *United States v. Baird*, 580 F.Supp.2d 889, 894 (D. Ne. 2008); *United States v. Shipley*, 560 F.Supp.2d 739, 744 (S.D. Iowa 2008); *United States v. Meillier,* 650 F. Supp. 2d 887, 895 (D. Minn. 2009) (Schiltz, J.).

3

> congressional directives, some of which the Sentencing Commissionactively opposed, rather than Commission study and expertise. *United States v. Diaz*, 720 F.Supp.2d 1039, 1042 (E.D.Wis.2010). The Sentencing Commission did not engage in its usual study of extensive empirical evidence in arriving at the offense levels and enhancements which dictate the Guidelines sentencing ranges for child pornography crimes. Unlike sentencing enhancements for many other crimes, the Commission did not determine that child pornography defendants who are subject to typical child pornography enhancements, such as use of a computer, are more culpable, more dangerous, or in need of a longer prison sentence as a deterrent than those defendants who commit the same offense without those same enhancements. Therefore, the Guidelines range in the typical child pornography case fails to achieve the 3553(a) objectives.

*United States v. Munoz,* 2012 WL 5351750 (D. Minn. Oct. 30, 2012) (footnote omitted).

Unlike sentencing enhancements for many other crimes, the Commission did not determine that child pornography defendants who are subject to typical child pornography enhancements, such as the use of a computer, are more culpable, more dangerous, or in need of a longer prison sentence to serve as a deterrent than defendants who commit the same offense without being subject to those same enhancements.

In its study of sentencings in child pornography cases, the Sentencing Commission reported that the use of computer enhancement was applied in 96% of sentencing proceedings, while the enhancement for images of prepubescent minors or minors under twelve was applied in 97% of sentencing proceedings.[5] In other words, many of the enhancement levels that are added to Mr. Pichurin's base offense level occur in the vast majority of child pornography cases. Such characteristics, which are involved in practically every instance of the instant offense, are better

---

[5] *United States Sentencing Commission. Report to Congress: Federal Child Pornography Guidelines*. p. 209. (December 2012) (data from FY 2010).

reflected in the base offense level, not as enhancement levels. Adding these as enhancers to practically all child pornography cases merely serves to distort the apparent severity of the offense before the court.

When using the base level for Mr. Pichurin's offense (32), excluding enhancers that lack credibility, and applying the applicable criminal history category of I, the Guidelines recommend a sentence much more appropriate for this case: 121 months to 151 months. This is less than the fifteen-year mandatory minimum.

**III.    Departures and Variances.**

The circumstances of this case support both a departure and a variance below the advisory guideline range. As outlined above, judges in this district and beyond find the defects in the guidelines applicable to child pornography cases to be uniquely misguided and untethered to reality, such that they provide little meaningful guidance on the fundamental sentencing question of what term of imprisonment is sufficient but not greater than necessary to give voice to the objectives of rehabilitation, deterrence, and retribution that are outlined at 18 U.S.C. § 3553(a). In addition to the child pornography guidelines' lack of credibility, the circumstances of this case support widely recognized departures and variances, namely, Pichurin's rehabilitation.

Since being originally charged in state court, Mr. Pichurin has been fully compliant in all respects. He has followed all terms and conditions of his release, including following all directives given by probation. Mr. Pichurin also voluntarily sought out and actively participated in treatment, making good progress. Mr. Pichurin appeared before this Court and entered a guilty plea that encompassed his state court charges. After entering his guilty, this Court provided Mr. Pichurin with the opportunity to continue to make meaningful progress in treatment by releasing him on a number of conditions. While fully complying with all of the conditions this Court imposed, Mr.

Pichurin has continued to make extraordinary strides in his treatment progress. He has been an active participate in treatment and made significant progress in taking responsibility for his behavior. Mr. Pichurin has attended nearly forty group therapy sessions and completed over twenty cognitive behavioral treatment assignments. During the course of therapy, it was additionally recommended that Mr. Pichurin seek the services of a psychiatrist. Mr. Pichurin immediately complied with this additional recommendation and obtained the help of a psychiatrist. Mr. Pichurin has been successfully following all medical advice, including remaining medication compliant. A recent sexual history polygraph examination has further confirmed that Mr. Pichurin is honestly addressing his behaviors. Mr. Pichurin has been extremely proactive in complying with all conditions imposed by the courts, probation, and his treatment providers, and all signs indicate that he will continue to follow all directives and obligations placed upon him. This includes the extensive amount of time Mr. Pichurin will be on supervised release.

Following earlier disagreements within and among Circuits, pre-sentence rehabilitation emerged as a widely accepted basis for below-guideline sentences.[6] Post- offense rehabilitation is a widely-accepted basis to impose a sentence below the advisory guidelines. Substantial reductions can be warranted both through a downward departure under § 5K2.0, and as a variance from the guidelines under 18 U.S.C.§ 3553(a).[7] Sentencing reductions of many years have been affirmed based solely on a defendant's rehabilitation efforts.[8]

---

[6] *See, e.g.*, *United States v. Shy*, 538 F.3d 933, 938 (8th Cir. 2008); *United States v. McFarlin*, 535 F.3d 808, 811 (8th Cir. 2008); *United States v. Chapman*, 356 F.3d 843, 849 (8th Cir. 2004); *United States v. Sanchez-Gonzalez*, 347 Fed.Appx. 852, 855 (3d Cir. 2009); *United States v. Martin*, 520 F.3d 87, 94 (1st Cir. 2008); *United States v. Brock*, 108 F.3d 31 (4th Cir. 1997); *United States v. Core*, 125 F.3d 74, 75 (2d Cir. 1997).

[7] *See e.g.*, *United States v. Shy*, 538 F.3d 933, 938 (8th Cir. 2008) (affirming a sentence of probation for a drug offender with a guideline range of 36-46 months, based inpart on post-offense rehabilitation).

[8] *See e.g.*, *United States v. McFarlin*, 535 F.3d 808, 811 (8th Cir. 2008) (affirming a sentence of probation in the face of a guideline range of 97-121 months in part based on post-offense rehabilitation).

A district court judge from Nebraska has provided an explanation for the role that a defendant's post-offense conduct impacts a sentencing analysis and can support a variance.

> When a defendant has demonstrated extraordinary success at rehabilitation efforts, the need for incarceration is diminished. The history and characteristics of the defendant are changed. The punishment that is "just" is changed. The need for specific deterrence is lessened. The need for correctional programs such as psychological counseling and drug rehabilitation may be negated. The defendant's isolation and incapacitation are no longer paramount for the protection of society.[14]

Indeed, the Eighth Circuit has remanded a case for resentencing when the district court erroneously refused to consider the post-offense rehabilitation of a defendant, holding that "atypical post-offense rehabilitation can itself be the basis for a departure under § 5K2.0."[9]

The Supreme Court reemphasized the significance of rehabilitation to sentencing in *Pepper v. United States*, 131 S.Ct. 1229 (2011). In *Pepper*, the Court resolved a split among the circuits in the defendant's favor, reversing the Eighth Circuit and holding that post-sentence rehabilitation can support a below-guideline sentence.[10] In so doing, the Court made it clear that all rehabilitation is relevant.

Based on the foregoing, it is clear that controlling precedent abundantly supports below-guideline sentences, as either a variance or departure, in cases where the defendant has demonstrated post-offense rehabilitation. Ultimately, this Court's sentencing decision must be guided by the principle under 18 U.S.C. § 3553(a) that the Court shall impose a sentence "sufficient, but not greater than necessary," and shall consider the following statutorily mandated sentencing factors.

### IV. The Statutory Sentencing Factors Fully Support a Sentence at or Below the Statutory Mandatory Minimum.

---

[9] *United States v. Chapman*, 356 F.3d 843, 847-49 (8th Cir. 2004).
[10] *Pepper*, 131 S.Ct. at 1241.

7

Regardless of Mr. Pichurin's guideline range, as discussed *supra*, his case presents circumstances which warrant a downward departure and variance. A downward departure or variance is particularly apt in a case involving child pornography, where application of the Guidelines often creates artificially and unnecessarily high sentencing ranges.

Accordingly, while the Guideline sentence remains the starting point for a sentencing analysis, under these circumstances it does not provide meaningful guidance. Rather, the court should be guided by the remaining factors set forth in 18 U.S.C. § 3553(a). While enumerated individually within § 3553(a), the relevant factors for Mr. Pichurin's case can be condensed into the following relevant groups: the nature and circumstances of his offense, § 3553(a)(1); his history and characteristics, *id*.; the need for the sentence to reflect societal concerns for just punishment, to deter criminal conduct, to protect the public, and provide Mr. Pichurin with correctional treatment in the most effective manner, § 3553(a)(2)(A)-(D); and the need to avoid unwarranted sentencing disparities among similar offenders, § 3553(a)(6). Each of these factors supports that a sentence at the fifteen-year mandatory minimum, combined with twenty-five years of supervised release, is sufficient, but not greater than necessary, to accomplish the goals of sentencing.

### A. The Nature and Circumstances of the Offense.

Mr. Pichurin first began viewing child pornography in approximately 2013. In the following years, his addiction remained untreated and the amount of child pornography he viewed grew. By 2020, Mr. Pichurin began to communicate online with minors. Mr. Pichurin knew this behavior was wrong and that he needed professional help, but he found it difficult to obtain help due to his embarrassment and depression.

Mr. Pichurin began communicating with five minor victims online. In the communications,

Mr. Pichurin engaged in explicit conversations and requested the minors to perform sexual acts or expose their sexual body parts during video chats. Mr. Pichurin retained videos of some of the communications, and in some instances, Mr. Pichurin can be seen masturbating while the sexual acts are being done. All of these videos and communications occurred online.

Mr. Pichurin did not come into close physical proximity to any of his victims. Mr. Pichurin did not meet any victim in person or attempt to arrange such a meeting. Unlike the majority of production of child pornography offenders, Mr. Pichurin did not have a family relationship nor position of authority over the victims. Mr. Pichurin himself never engaged any sexual contact with the victims, nor did he engage in any coercion. Mr. Pichurin has also never engaged in exploitation of a child unrelated to the instant offense conduct.

**B.     Mr. Pichurin's History and Characteristics.**

Mr. Pichurin is a twenty-seven-year-old male. Mr. Pichurin moved to California from Russia when he was one year old and is a naturalized citizen of the United States. He has two siblings, aged 26 and 20, with whom he has not had contact in almost three years. Mr. Pichurin's parents were married before he was born, remain married, and are both currently employed at Mayo Clinic in Rochester, Minnesota.

Mr. Pichurin attended grade school through high school in California. Throughout grade and middle school, Mr. Pichurin had an individual education plan due to concerns around Mr. Pichurin's symptoms of depression, withdrawn nature, and lack of social skills. Mr. Pichurin graduated high school with a 2.41 grade point average. Mr. Pichurin's academic performance began to flourish during his post-secondary studies. He earned an Associate in Science Degree in Computer Science from Rochester Community and Technical College with a 3.48 grade point average; and a Bachelor of Science degree in Accounting from Winona State University with a

3.44 grade point average.

Mr. Pichurin was working as a credit analyst at the time this offense was discovered. Mr. Pichurin lost his employment as a result being arrested for this offense. Mr. Pichurn was able to quickly find another job at a UPS facility, but, ultimately, this position was also terminated due to the ongoing criminal charges. During his pre-sentence release, Mr. Pichurin was able to financially support himself with the help of his parents and by depleting his meagre savings. Mr. Pichurin's net worth is approximately $5,323, of which $4,194 is represented by the value of his motor vehicle.

      **C.**      **Societal and Personal Sentencing Needs.**

In fashioning an appropriate sentence, the Court is directed to consider society's needs for a sanction that is a just punishment, promotes respect for the law, deters criminal conduct, and reflects the seriousness of the offense, while ensuring the sanction is appropriate for the individual offender before the Court.

As for the seriousness of the offense, Mr. Pichurin pled guilty to an offense that carries a fifteen-year minimum penalty and a thirty-year maximum sentence of imprisonment. 18 U.S.C. § 2251(a) and (e). The Court is free to impose any sentence within this range that is consistent with the § 3553(a) factors. The increased seriousness for this production offense contrasted with a possession offense, is reflected in the significantly increased minimum sentence of fifteen years. As discussed *supra*, the fifteen-year mandatory minimum is more than the guideline calculation when only using the offense base level and excluding enhancers that are present in almost every child pornography case. Anything beyond fifteen years is more than what is necessary to accomplish the goals of sentencing, especially given the fact that a fifteen-year prison sentence followed by twenty-five years of supervised release means Mr. Pichurin will be supervised until

his mid to late 60s.

Regarding deterrence, there is little evidence supporting the notion that a long prison sentence provides a general deterrent effect. In fact, the bulk of evidence suggests that there is little to no such impact of harsh sentences. Stated plainly, long sentences simply do not deter other individuals from offending.[11] Additionally, there is very little evidence that warehousing offenders guards against re-offense.

Specific deterrence will not be furthered by sentencing Mr. Pichurin to more than the statutory minimum term of imprisonment, especially when considered in conjunction with the contemplated period of supervised release.

### D. A Sentence at the Fifteen-Year Statutory Minimum Will Not Create Unwarranted Sentencing Disparities.

In determining an appropriate sentence, a court should consider whether the sentence imposed creates unwarranted sentencing disparities among similarly situated offenders. 18 U.S.C. § 3553(a)(6). Unwarranted disparities can arise by the presence or absence of Guidelines circumstances that exist in only some districts, or by virtue of the guidelines which themselves create those disparities.[12]

It is well established that a variance to a sentence below an offender's Guideline range does not in and of itself create an unwarranted disparity. Sentencing courts have regularly varied from Guideline ranges that have called for a greater term of incarceration. This is particularly true in child pornography production cases, where courts vary downward in nearly 60% of such matters.[13]

---

[11] *See, e.g.,* Valerie Wright, Ph.D., *Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment* (Nov. 2010), *available at* https://www.sentencingproject.org/wp- content/uploads/2016/01/Deterrence-in-Criminal-Justice.pdf.

[12] *Spears v. United States*, 555 U.S. 261, 266 (2009) ("[D]istrict courts are entitled to reject and vary categorically from the crack cocaine Guidelines based on a policy disagreement with those Guidelines.")

[13] United States Sentencing Commission, Federal Sentencing of Child Pornography: Production Offenses (Oct. 2021), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf.

Mr. Pichurin's offense does not include the majority of characteristics found in cases where longer sentences were imposed. Longer sentences were given when the victims were infants or toddlers, when the violator was a parent or in a position of authority of a victim, involved sexual contact, or involved incapacitated victims.[14] Mr. Pichurin's offense also does not possess characteristics found in a majority of all production cases. Slightly over 60% of production offenses involved the offender maintaining a position of trust over the victim, whether through familial relationship of role as teacher or coach.[15] Slightly over 80% of child pornography production offender had sexual contact with a minor.[16]

It is clear that downward variances are common and frequent for many years less than what is contemplated by the Guidelines. Particularly under the present circumstances, a sentence at the mandatory minimum followed by twenty-five years of supervised release will not create any unwarranted sentencing disparity.

---

[14] *Id*.
[15] *Id*.
[16] *Id*.

## CONCLUSION

Based on the foregoing, Mr. Pichurin respectfully requests that this Court sentence him to fifteen-years imprisonment with twenty-five years of supervised release.

Respectfully submitted,

Date: 3/11/2022   **GODWIN DOLD**

Jay S. Adkins #0396354
Attorney for Defendant
300 1st Ave. NW, Suite 306
Rochester, MN  55901-2830
(507) 218-8383 Ext. 3
jay@godwindold.com